## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**SHAWN MACKEY**,

        *Plaintiff*,

v.

**AIRBNB, INC. and PAMELA FOHLER**,

        *Defendants.*

CAUSE NO. 3:23-CV-582-CWR-ASH

## ORDER

Before the Court are defendant Pamela Fohler's *Motion to Dismiss* for lack of personal jurisdiction and improper venue, plaintiff Shawn Mackey's *Response in Opposition*, and Fohler's *Reply*. Docket Nos. 15, 20, and 27. Defendant Airbnb, Inc. filed a *Motion to Compel Arbitration or in the alternative Dismiss for Lack of Personal Jurisdiction*. Docket No. 13. That Motion will be taken up in a separate Order.

Upon review, Fohler's *Motion to Dismiss* is **denied**.

**I.  Factual and Procedural History**

Plaintiff Shawn Mackey filed suit against Pamela Fohler and Airbnb, Inc. claiming Fohler and Airbnb conspired to extort money from him in violation of the Racketeering Influence and Corrupt Organizations Act ("RICO"). Docket No. 1 at 14-20. He further asserts state law claims of extortion, invasion of privacy, intentional infliction of emotional distress, breach of contract, and breach of the implied covenant of good faith and fair dealing. *Id.*

The allegations that follow are drawn from Mackey's complaint. They must be taken as true for present purposes.

The series of events giving rise to the instant action started in July 2022 when Mackey decided to rent Fohler's Airbnb property in Memphis, Tennessee for two nights. Mackey resides in Madison, Mississippi and informed Fohler that he resided in Mississippi. Fohler resides in California and was physically present in California when she communicated with Mackey through text messages and Airbnb's website.

Tensions between Mackey and Fohler started shortly after Mackey checked into Fohler's Memphis property on September 9, 2022. Mackey had booked the Memphis house for four guests, he notified Fohler that more guests might join, and told her he was not sure how many guests would stay overnight. Fohler informed him that he could "wait until you know who's coming over to add them by requesting a change through Airbnb," as required by Airbnb's insurance policy. Docket No. 1-2 at 1.

On check-in day, Mackey provided Fohler with a list of nine guests through Airbnb's messaging system. Including himself, the total anticipated guest count was 10. He noted that only four to five guests would stay overnight. Although the Memphis property listing included a guest limit of nine, *see* Docket No. 1-3 at 1, Fohler informed Mackey that only eight guests were permitted at the residence "due to City restrictions and capacity at our home." Docket No. 1-2 at 4-5.

Two hours after Mackey checked in and notified Fohler of his guest list, Fohler rapidly messaged him for approximately one and a half hours. *Id.* at 5. She asked Mackey to update his guest count on the reservation, to limit the number of cars on the property to four vehicles (a rule not previously known to anyone), informed Mackey of several noise complaints, and ultimately asked him to leave the property for violating the no party rule and disturbing her neighbors "by cursing and yelling in the parking lot." *Id.*

2

Mackey then attempted to contact Fohler. Though he did not reach her, he spoke with her husband and seemingly resolved the issues—he and his guests were permitted to remain at the Memphis property until their designated check-out date. Docket No. 1 at 7-8. On September 10, 2022, Mackey received a message from Fohler with the standard check-out instructions; there was no mention of the previous night's events. He and his guests checked out the following day.

Immediately following Mackey's stay, he was charged an additional $502.46 fee. Mackey disputed it with Airbnb and left an unfavorable review of his stay at Fohler's property on Airbnb's website. Fohler allegedly began harassing Mackey after he posted the review, which Airbnb later removed from its website. *Id.* at 9. Mackey then asked Airbnb representatives to refund the $502.46 additional fee and complained of Fohler's mistreatment.

On September 17, 2022, Mackey received a text message from Fohler. It said: "Photo at 3:16am is especially notable. Should I forward the photos . . . to [your wife] or will you? The videos will come shortly. I think they are too big for text so I will post to Youtube." Docket No. 1 at 10; Docket No. 1-2 at 11. Fohler appended an image of Mackey walking into the Airbnb with a female companion who was not his wife.

On September 19, 2022, Airbnb informed Mackey that he was required to pay additional fees amounting to $950.00. Docket No. 1 at 11. He was charged for violating house rules and failing to register additional guests.

The following day, Fohler allegedly created an email address with the username "shawn69@outlook.com" and used that email to send the compromising image of Mackey to his wife's work email. Docket No. 1 at 11-12. Fohler denies creating the email account and sending the email to Mackey's wife. Docket No. 16 at 15.

3

At all relevant times, Mackey was physically in Mississippi when he received communications from Fohler. Docket No. 20 at 3 n.4. Fohler was physically present in California when she corresponded with Mackey. Docket No 16 at 15.

## II.     Legal Standard

### A.     Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

A court may dismiss an action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). When a nonresident defendant challenges a court's personal jurisdiction, the plaintiff bears the burden of making a *prima facie* showing that the court has personal jurisdiction. *Caldwell v. Palmetto State Savs. Bank of S.C.*, 811 F.2d 916, 917 (5th Cir. 1987). When reviewing a motion to dismiss for lack of personal jurisdiction, the court accepts the plaintiff's allegations as true and resolves all factual disputes in her favor. *Guidry v. U.S. Tobacco*, 188 F.3d 619, 625 (5th Cir. 1999).

### B.     Rule 12(b)(3) Motion to Dismiss for Improper Venue

A defendant may seek dismissal of an action for improper venue. Fed. R. Civ. P. 12(b)(3).

Generally, venue is proper in a judicial district where (1) "any defendant resides, if all defendants are residents of the State in which the district is located"; (2) "a substantial part of the events or omissions giving rise to the claim occurred"; or (3) any defendant is subject to the court's personal jurisdiction, if there is otherwise no other district the action may be brought. 28 U.S.C. § 1391(b)(1)-(3). If a case does not fall into any of these categories, venue is improper and the case should be dismissed or transferred pursuant to 28 U.S.C. § 1406(a).

4

When reviewing a *Motion to Dismiss* for improper venue, the court views all facts in the light most favorable to the plaintiff. *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 492-93 (5th Cir. 2018).

## III. Discussion

### A. Personal Jurisdiction

A court sitting in diversity has jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute creates personal jurisdiction; and (2) the court's exercise of personal jurisdiction comports with the due process guarantees of the United States Constitution. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).

#### 1. Mississippi's Long-Arm Statute

Mississippi's long-arm statute is satisfied here because, taking Mackey's claims as true, Fohler committed at least one tort against Mackey in the State of Mississippi.

Mississippi's long-arm statute has three prongs: the contracts prong, tort prong, and doing business prong. *See Allred v. Moore & Peterson*, 117 F.3d 278, 282 n.5 (5th Cir. 1997). A nonresident's actions need only satisfy one prong to meet the requirements of personal jurisdiction.

Relevant here, the tort prong permits a court's exercise of personal jurisdiction over a nonresident person who "shall commit a tort in whole or in part in this state against a resident . . . of this state." Miss. Code Ann. § 13-3-57. "Under the tort prong of the Mississippi long-arm statute, personal jurisdiction is proper if any element of the tort (or any part of any element) takes place in Mississippi." *Allred*, 117 F.3d at 282. A tort is complete when and where the actual injury occurs, not where the consequences that result from the injury occur. *Jobe v. ATR Marketing, Inc.*, 87 F.3d 751, 753 (5th Cir. 1996).

5

Fohler argues that Mackey's claims fall short of establishing jurisdiction because (1) she was never present in Mississippi and (2) Mackey merely alleges economic harm that resulted from Fohler's actions. Docket No. 16 at 9-10. Mackey counters that the "verbal acts" which caused his injuries were delivered in Mississippi, and thus Fohler's actions fall within the purview of Mississippi's long-arm statute. Docket No. 20 at 4.

Mackey is correct.

First, Fohler did not need to be physically present in Mississippi to be subjected to this Court's jurisdiction. Sending the text message from California to Mackey, while he was physically present in Mississippi, falls "within the ambit of the Mississippi statute." *Brown v. Flowers Indus.*, 688 F.2d 328 (5th Cir. 1982) (finding that a telephone call placed from Indiana to Mississippi satisfied the tort prong of Mississippi's long-arm statute). The same is true when one meddles in the personal lives of complete strangers by sending an image, to a Mississippi woman, of her husband's presumably questionable activities. For what purpose does one take such invasive action? Perhaps Ms. Fohler can explain.

Second, the brunt of the harm Mackey suffered upon receiving Fohler's threat, accompanied by the image of his extramarital rendezvous, occurred while he was physically present in Mississippi. Although Fohler was in California when she sent the message to Mackey, Mississippi was the focal point of the harm Mackey suffered. In fact, all of Fohler's "actions were expressly aimed at" a resident in Mississippi. *Calder v. Jones*, 465 U.S. 783, 789 (1984). Therefore, Mackey's injuries, not merely the consequences of his injuries, occurred in the State of Mississippi.

Personal jurisdiction is, thus, satisfied under Mississippi's long-arm statute.[1]

### 2.   Due Process

Next, the Court's exercise of personal jurisdiction over this dispute comports with the guarantees of due process.

To comport with due process, an exercise of personal jurisdiction must satisfy two requirements. *Allred*, 117 F.3d at 285. First, the nonresident defendant must have purposefully availed herself of the benefits and protections of the forum state by establishing minimum contacts with said state. *Id.* Second, a court's exercise of personal jurisdiction over the nonresident cannot offend traditional notions of fair play and substantial justice.

The minimum contacts inquiry may be subdivided into contacts that give rise to specific or general jurisdiction. *Id.* at 286. "Specific jurisdiction is appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action." *Id.* General jurisdiction is appropriate where the nonresident defendant has continuous and systematic contacts with the forum state. *Id.*

Fohler has not had such continuous or systematic contacts with Mississippi to satisfy general jurisdiction. The Court's exercise of jurisdiction, instead, invokes specific jurisdiction. *See Martin v. Marshall*, No. 3:20-CV-46-CWR-LGI, 2021 WL 3412443, at *1 (S.D. Miss. Aug. 4, 2021). The legal standard for determining specific jurisdiction is as follows: (1) Did the defendant have minimum contacts with the forum state—purposely directing its activities

---

[1] In his Complaint and *Response in Opposition*, Mackey contends that further discovery would reveal additional contacts between Fohler and other Mississippi residents so as to bolster grounds for the Court's exercise of personal jurisdiction. The Court's ruling today is not a complete factual finding. Should Fohler seek to pursue a personal jurisdiction defense at summary judgment, she may do so, in which case Mackey can seek discovery to the contrary. The parties shall alert the Magistrate Judge about the scope of discovery sought.

toward the forum state or purposely availing itself of the privilege of conducting activities therein? (2) Did the plaintiff's cause of action arise out of or result from the defendant's forum-related contacts? (3) Would the exercise of personal jurisdiction be reasonable and fair? *Id.*

To start, Fohler directed her activities toward Mississippi when she sent Mackey the compromising image of him and his companion and subsequently emailed the image to Mackey's wife. Both Mackey and his wife are Mississippians and both were present in Mississippi when they received Fohler's correspondence. Although Fohler denies emailing the image to Mackey's wife, the Court must resolve factual conflicts "in plaintiff's favor for purposes of determining whether a prima facie case for" personal jurisdiction has been established. *Guidry*, 188 F.3d at 626. Consequently, the Court accepts as true Mackey's allegation that Fohler sent the image—which, of course, would only be accessible through the cameras on her property—to Mackey's wife.

Next, Mackey's tort claims arose out of or resulted from Fohler's "forum-related contacts." *Martin*, 2021 WL 3412443 at *1. As explained above, Mackey's claims against Fohler are based upon the injuries he sustained from receiving Fohler's text message in Mississippi and the injuries he sustained from Fohler disclosing his "entanglement" to his wife.

Lastly, this Court's exercise of personal jurisdiction over Fohler is fair and reasonable. "[S]pecific *in personam* jurisdiction can be supported by a *single* contact" with the forum state. *Internet Doorway, Inc. v. Parks*, 138 F. Supp. 2d 773, 779 (S.D. Miss. 2001). Certainly, Fohler's multiple acts—sending a text message and subsequent email—support exercising personal jurisdiction here. Because she "intentionally and purposefully wished her actions and words to impact" a resident in Mississippi, Fohler created minimum contacts in this forum state.

8

*Martin*, 2021 WL 3412443 at *2. It is thus, fair and reasonable for this Court to exercise personal jurisdiction over her.

The burden now shifts to Fohler to show that the Court's exercise of jurisdiction would be unfair. *Id.* Fohler submits that asserting jurisdiction over her "would be unfair and unreasonable considering the substantial burden, disruption and expense that Fohler would endure if forced to litigate a case thousands of miles from her home." Docket No. 16 at 16. The Court weighs a number of factors when assessing fairness and justice: "(1) the burden on the defendants; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interest of the interstate system in the most efficient resolution of disputes; and (5) the collective interests of states in furthering important substantive social policies." *Internet Doorway*, 138 F. Supp. 2d at 779.

It is rare to find a court's exercise of jurisdiction unfair after, as here, minimum contacts have been established. *See Thomas*, 876 F. Supp. 2d at 797. The Court appreciates that Fohler is a California resident who has never visited Mississippi. It is hard pressed, however, to find the burdens of requiring her to litigate in Mississippi violative of fair play and substantial justice. Fohler had reason to know that Mackey, a Mississippi resident, would be in Mississippi when she threatened to disclose the personal image to Mackey's wife. She further had reason to know that Mackey's wife would have received her email while in Mississippi. Indeed, she disruptively sent the email to Mackey's wife's work email. Mississippi has an interest in adjudicating harms that befall its residents. Fohler's "generalized difficulty in traveling to Mississippi is not a burden violative of due process." *Id.* at 798. And the travel problem is not very compelling here since Fowler runs the Memphis property at the heart of this dispute thousands of miles away from her home.

The Court's exercise of personal jurisdiction over Mrs. Fohler, thus, comports with the guarantees of due process.[2]

**B.     Venue**

Fohler argues that venue is not proper in the Southern District of Mississippi because although Mackey resides here, the alleged RICO predicate acts occurred in California. Docket No. 16 at 18. For that reason, Fohler contends, the ends of justice do not require this Court to exercise jurisdiction over any of Mackey's claims. And, though Fohler does not expressly raise a Rule 12(b)(6) defense, she states Mackey cannot state a cognizable RICO claim. *Id.*

As the Court already explained, all of Mackey's claims arose out of injuries he sustained in Mississippi. It is not dispositive that Fohler was present in California when she sent the allegedly tortious messages to residents present in Mississippi. Venue in the Southern District of Mississippi is proper because a substantial part of the events giving rise to Mackey's claims occurred in Mississippi. *See* 28 U.S.C. § 1391(b)(2); *Trois*, 882 F.3d at 493 (reasoning that communications to a forum state can constitute a substantial part of the events giving rise to a plaintiff's claims, if the claims derive directly from those communications).

---

[2] The Court acknowledges that Mackey asserts jurisdiction under both federal question and diversity jurisdiction. Docket No. 1 at 3-4. Because RICO provides for national service of process, "the relevant [personal jurisdiction] inquiry is whether the defendant has had minimum contacts with the United States." *Busch v. Buchman*, 11 F.3d 1255, 1258 (5th Cir. 1994). In which case, "it does not offend traditional notions of fair play and substantial justice to exercise personal jurisdiction over a defendant residing within the United States." *Id.*

Despite this holding, the Fifth Circuit has also expressed "grave misgivings" about basing a court's jurisdiction on a defendant's contacts with the United States. *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 826 (5th Cir. 1996). Nevertheless, that remains the law in this circuit.

Because Fohler is a resident of the United States, she has sufficient minimum contacts to justify this Court's exercise of personal jurisdiction. The requirements of personal jurisdiction are, therefore, satisfied under both a diversity and federal question jurisdiction inquiry.

Venue in the Southern District of Mississippi is, thus, proper.

IV. **Conclusion**

For the foregoing reasons, Fohler's *Motion to Dismiss* is **denied**.

**SO ORDERED**, this the 14th day of August, 2024.

s/ Carlton W. Reeves  
UNITED STATES DISTRICT JUDGE