IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**SHAWN MACKEY**,

        *Plaintiff*,

v.

**AIRBNB, INC. and PAMELA FOHLER**,

        *Defendants*.

CAUSE NO. 3:23-CV-582-CWR-ASH

**ORDER**

Before the Court are defendant Airbnb, Inc.'s *Motion to Compel Arbitration or in the alternative Dismiss for Lack of Personal Jurisdiction*, plaintiff Shawn Mackey's *Response in Opposition*, and Airbnb's *Reply*. Docket Nos. 13, 23, 24, 30, and 31.

Upon review, Airbnb's *Motion to Compel Arbitration* is granted. Mackey's claims against Airbnb are stayed.

This Order does not affect Mackey's pending claims against defendant Fohler.

**I.  Factual and Procedural History**

Mackey filed this suit against Airbnb and Fohler claiming that the two conspired to extort money from him in violation of the Racketeering Influence and Corrupt Organizations Act. Docket No. 1 at 14-20. He further asserts state law claims of extortion, invasion of privacy, intentional infliction of emotional distress, breach of contract, and breach of the implied covenant of good faith and fair dealing. *Id.*

The Court summarized key allegations in this case in its denial of Fohler's *Motion to Dismiss*. *See* Docket No. 32. What follows is a summary of the allegations relevant to whether Mackey's claims against Airbnb must be sent to arbitration.

When prospective "members"[1] wish to create an account with Airbnb, they are required to agree to Airbnb's Terms of Service (among other agreements). Prior to creating an account, prospective members are presented with a visible hyperlink to Airbnb's Terms of Service. Below those hyperlinks are two electronic buttons: "Agree" and "Decline." Directly above the buttons is a sentence stating: "I also accept Airbnb's Terms of Service[.]" Prospective members must affirmatively click "Agree" to create an account and use Airbnb's website and services.

Airbnb also requires its members to demonstrate their continued agreement to be bound by its Terms of Service each time a member books a reservation. To book a reservation, members are presented with a booking request page. At the end of that page is a colored electronic button entitled "Request to book." Directly above that button is a visible hyperlink to Airbnb's Terms of Service and a sentence stating: "I also agree to the updated Terms of Service."

Mackey created an Airbnb account on July 30, 2019. On July 20, 2022, he booked Fohler's property in Memphis, Tennessee for two nights through Airbnb's website. Airbnb's business records indicate that Mackey affirmatively agreed to its Terms of Service on July 30, 2019—when he created his account, and on July 20, 2022—when he booked Fohler's Memphis property. Docket No. 13-1 at 7.

---

[1] "In the Airbnb Terms, hosts and guests are collectively referred to as 'Members.'" Docket No. 13-1 at 2.

Mackey does not dispute that he agreed to Airbnb's Terms of Service. Nor does he dispute that the Terms of Service contained an arbitration agreement. He instead argues that he didn't agree to the Terms of Service because he did not read them, and that the Terms of Service and its arbitration agreement are unconscionable. Thus, he submits, the arbitration agreement is unenforceable.

## II.    Legal Standard

The Federal Arbitration Act ("FAA") provides that an agreement to arbitrate contractual disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This language reflects the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Nevertheless, as the FAA makes clear, arbitration agreements may be invalidated "upon such grounds as exist at law or in equity." 9 U.S.C. § 2. Put another way, generally-applicable contract defenses, such as unconscionability, may invalidate an otherwise enforceable arbitration agreement. *Concepcion*, 563 U.S. at 339.

Whether a court should compel arbitration involves two analytical steps. *Kubala v. Supreme Prod. Servs.*, 830 F.3d 199, 201 (5th Cir. 2016). First, the court must determine "whether the parties entered into any arbitration agreement at all," which essentially asks whether they formed a contract. *Id.* Second, the court determines whether the particular claim before it is covered by the arbitration agreement. *Id.* If the arbitration agreement contains a valid delegation clause, the authority to decide questions of arbitrability belongs to the arbitrator. *Id.* at 202.

When the party seeking arbitration points to a delegation clause, the court's analysis changes. *Id.* The first step remains the same: whether the parties entered into a valid

3

agreement. *Id.* The second step, however, becomes "whether the purported delegation clause is in fact a delegation clause—that is, it evinces an intent to have the arbitrator decide whether a claim must be arbitrated." *Id.*

If the parties formed a contract and a delegation clause exists, "the motion to compel arbitration should be granted in almost all cases." *Id.* And once a court concludes that a dispute is subject to arbitration, the FAA requires the court, "on application of one of the parties," to stay all proceedings pending arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024).

## III. Discussion

### A. Contract Formation

Federal courts apply state-law when determining whether a valid arbitration agreement exists. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). Airbnb argues, and Mackey concedes,[2] that California law controls. In California, the party petitioning the court to compel arbitration bears the burden of proving a valid arbitration agreement exists. *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 585 (N.D. Cal. 2020).

#### 1. Manifestation of Assent

To form a contract under California law, the parties must manifest their mutual assent to the terms of the agreement. *See id.* "Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties." *B.D. v. Blizzard Ent., Inc.*, 292 Cal. Rptr. 3d 47, 58 (Cal. Ct. App. 2022). Though the formation of contracts online has introduced new considerations, "[t]he internet has not fundamentally changed the requirement that mutual manifestation of assent, whether by written or spoken word or by

---

[2] *See* Docket No. 23 at 4 (applying both California and Mississippi contract law).

4

conduct, is the touchstone of contract" formation. *Dohrman v. Intuit, Inc.*, 823 F. App'x 482, 483 (9th Cir. 2020).

Mutual assent to an arbitration clause requires only that "a reasonably prudent Internet customer would be put on inquiry notice of the agreement's existence and contents." *In re Juul Labs, Inc., Antitrust Litig.*, 555 F. Supp. 3d 932, 947 (N.D. Cal. 2021) (quotations omitted). It does not require "actual notice of the terms of an arbitration agreement." *Id.* Courts consider the "conspicuousness and placement of the Terms of Use hyperlink, other notices given to users of the terms of use, and the website's general design in assessing whether a reasonably prudent user would have inquiry notice" of the terms of online contracts. *Dorhmann*, 823 F. App'x at 483-84 (quotations omitted).

Mackey manifested his assent to be bound by Airbnb's Terms of Service.[3] Airbnb's Terms of Service agreement operates much like a "clickwrap agreement." A clickwrap agreement is an online contract that requires website users to click an "I Agree" box after being presented with a list of terms and conditions of use. *Id.* Airbnb explains that before a prospective member can create an account with Airbnb, he must agree to its Terms of Service, among other agreements. Docket No. 13-1 at 6. Prior to creating an account, all prospective members are directed to a "Before you join" screen which visibly hyperlinks to the Terms of Service. *Id.* Prospective members are then given the option to either "Agree" or "Decline" agreement with the Terms of Service by affirmatively clicking an option.

---

[3] Mackey expressed confusion as to whether the Terms of Service he agreed to on July 30, 2019, or the updated Terms of Service he agreed to on July 20, 2022 control. This action arises out of the reservation he made on July 20, 2022. Thus, the Terms of Service he agreed to on July 20, 2022 controls.

At times, Airbnb updates its Terms of Service. Before those updates become effective, Airbnb emails its current members to notify them of the impending updates. *Id.* at 4. That email includes a hyperlink to the updated Terms of Service and provides members an opportunity to review said terms. Members cannot continue using Airbnb's services or book accommodations with other members unless they demonstrate their continued agreement with Airbnb's Terms of Service. When prompted—at the time of booking a new reservation—members can affirmatively click an electronic button to indicate their continued agreement to remain bound by Airbnb's terms. *Id.* That button is accompanied by text "indicating that [members] were accepting the updated Airbnb terms." *Id.*

Airbnb's business records indicate that on July 30, 2019, Mackey agreed to Airbnb's terms when he "clicked the 'Accept' button at the end of the account creation process indicating his acceptance of the Airbnb Terms." *Id.* at 7. Airbnb further submits that Mackey agreed to be bound by Airbnb's updated Terms of Service when he booked the reservation on July 20, 2022. *Id.*

Airbnb is correct.

Above the "Agree" button is an inconspicuously placed hyperlink to Airbnb's Terms of Service, as well as a sentence stating: "I also accept Airbnb's Terms of Service[.]" It is undisputed that Mackey affirmatively clicked "Agree" and, thus, manifested his assent to the Terms of Service.

Mackey admitted to seeing the hyperlink, opening the hyperlink, scrolling through the Terms of Service, and clicking "Agree." Docket No. 23-1 at 3. This conduct evinced a clear manifestation of assent to Airbnb's terms. *See Gurule v. Airbnb, Inc.*, No. 2:23-CV-8067-CAS(JCx), 2023 WL 8438545, at *3 (C.D. Cal. Dec. 4, 2023). In booking the reservation, Mackey

6

was presented with the option to review the updated terms and informed that by requesting the reservation, he agreed to said terms. Docket No. 13-1 at 62. Under these circumstances, any reasonably prudent user would have had inquiry notice of Airbnb's terms.

Mackey argues that he did not manifest his assent to Airbnb's terms because he "did not take the time to read them." Docket No. 23-1 at 3. He contends "no one could be expected to sit down and try to read, much less understand" such a "lengthy" document. Docket No. 23 at 8. According to Mackey, Airbnb's terms are actually "designed *not* to be read." *Id.* at 9. He laments that he cannot be expected to resist scrolling to the bottom of a legally binding contract without reading the terms therein. As Mackey, and certainly his counsel are aware, reading is fundamental. A failure to read a legally binding agreement is no defense to contract formation. *See Pinnacle Museum Tower Assoc. v. Pinnacle Mkt. Dev. (US), LLC,* 282 P.3d 1217, 1224 (Cal. 2012); *B.D.*, 292 Cal. Rptr. 3d at 58.

For these reasons, Airbnb has met its burden of proving Mackey's manifestation of assent to its Terms of Service and the agreement to arbitrate.

## 2. Unconscionability

Mackey argues then that the Terms of Service and arbitration provision are unenforceable because they are unconscionable. This Court joins other courts who have considered and rejected similar challenges to Airbnb's Terms of Service.[4]

---

[4] *See, e.g., Plazza v. Airbnb, Inc.,* 289 F. Supp. 3d 537, 548-53 (S.D.N.Y. 2018) (finding that Airbnb's Terms of Service were not unconscionable and sufficiently noticed plaintiffs of the arbitration agreement therein); *Morris v. Airbnb, Inc.*, No. CIV-19-1157-G, 2020 WL 5823542, at *3 (W.D. Okla. Sept. 30, 2020) (finding that plaintiff's acceptance of Airbnb's Terms of Service formed an agreement between the parties to arbitrate certain disputes"); *Dunbar v. Airbnb, Inc.*, No. 19-648-JMS-WRP, 2020 WL 1550236, at *5 (D. Haw. Apr. 1, 2020) (finding procedural unconscionability absent because Airbnb's arbitration clause is neither hidden nor incomprehensible).

"The party resisting enforcement of an arbitration agreement has the burden to establish unconscionability." *Ramirez v. Charter Commc'ns, Inc.*, 551 P.3d 520, 529 (Cal. 2024). Under California law, a contract must be procedurally *and* substantively unconscionable to be rendered invalid. *See Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 556 (S.D.N.Y. 2018) (applying California law).

"The analysis for procedural unconscionability begins with an inquiry into whether the contract is one of adhesion." *Lee v. DoNotPay, Inc.*, 683 F. Supp. 3d 1062, 1076 (C.D. Cal. 2023) (quotations omitted). A contract of adhesion is a standardized "take-it-or-leave-it" contract which is drafted by the party of greater bargaining power and relegates the other party to either adhere to or reject the contract. *Id.* at 1077. If a contract is adhesive, the inquiry becomes whether the circumstances around its formation were so oppressive or surprising as to render the contract unenforceable. *Id.* "Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form." *Pinnacle*, 282 P.3d at 1232.

The Court starts with the element of surprise. Mackey argues that the Terms of Service are procedurally unconscionable because the arbitration agreement is "hidden" and does not appear until Section 23 of the agreement. Docket No. 23 at 8.

Mackey's argument falls short.

Page one of the Terms of Service provides in bold print: "**Section 23 of these Terms contains an arbitration agreement . . . that apply to all claims brought against Airbnb in the United States. Please read them carefully**." Docket No. 13-1 at 64. Three lines below is a sentence stating: "These Terms of Service ("**Terms**") are a binding legal agreement between you and Airbnb." *Id.* Such language is not hidden within a prolix printed form. Airbnb

8

highlighted the existence and location of the arbitration provisions at the outset of its Terms of Services and cautioned members to take heed to actually *read* those terms. *Accord Plazza*, 289 F. Supp. 3d at 543; *Dunbar v. Airbnb, Inc.*, No. 19-648-JMS-WRP, 2020 WL 1550236, at *5 (D. Haw. Apr. 1, 2020).

Mackey next contends that Airbnb's terms are contracts of adhesion, and thus oppressive, because (1) Airbnb possessed 100% of the bargaining power, and (2) Mackey did not have a meaningful choice in the contract formation process.

Although Airbnb's terms are presented on a take-it-or-leave-it basis, nothing in the record suggests that Airbnb was Mackey's only choice for the booking services Airbnb provides. There are numerous online booking services Mackey could have contracted with.[5] At all times, he had a meaningful choice to reject Airbnb's terms and contract elsewhere. Furthermore, the arbitration provision is clearly labeled in bold text with an isolated title, indicating "United States Dispute Resolution and Arbitration Agreement." Docket No. 13-1 at 80. Although a company is not obligated to highlight its arbitration clause, the fact that Airbnb did weighs against finding procedural unconscionability. *Lee*, 683 F. Supp. 3d at 1077 (citing *Sanchez v. Valencia Holding Co., LLC*, 353 P.3d 741 (Cal. 2015)); *see also Gardiner v. Walmart Inc.*, No. 20-CV-04618-JSW, 2021 WL 2520103, at *9 (N.D. Cal. Mar. 5, 2021) ("[A]dhesion contracts are not per se unconscionable under California law.").

Finding procedural unconscionability absent, the Court need not reach the issue of substantive unconscionability, as both are required to invalidate an agreement to arbitrate.

---

[5] Vrbo and Booking.com are two other online home-booking platforms presently in business, and this is hardly a complete list of the market.

### B. Delegation Clause

Having found that the parties entered into a valid agreement, the Court's next task is determining "whether the purported delegation clause is in fact a delegation clause—that is, it evinces an intent to have the arbitrator decide whether a claim must be arbitrated." *Kubala*, 830 F.3d at 201. When a party seeks to "compel arbitration on the basis of [a] delegation clause, we must treat it as valid absent any specific challenge to the delegation clause." *Edwards v. Doordash, Inc.*, 888 F.3d 738, 746 (5th Cir. 2024) (applying California law).

Although Mackey purports to raise both a "general attack" on the Terms of Service and an "individual" attack against the arbitration clauses themselves, his briefing does not mount a specific challenge to the delegation clause.[6] Mackey's only mention of the delegation clause is buried in a footnote, *see* Docket No. 23 at 2 n.3. That is not enough. Because there is a valid—and unchallenged—delegation clause, all remaining questions of arbitrability are for the arbitrator to decide.

## IV. Conclusion

The *Motion to Compel Arbitration* is **granted**. The claims against Airbnb are stayed. *See Smith*, 601 U.S. at 476.

**SO ORDERED**, this the 15th day of August, 2024.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

---

[6] Mackey does argue that other clauses—Assumption of Risk, Modification, Liability, and Indemnification clauses, to name a few—are unconscionable. Nevertheless, "[b]ecause § 2 of the FAA states that an agreement to arbitrate is 'valid, irrevocable, and enforceable,' and does not address the 'validity of the contract in which it is contained,' the [Supreme Court] has held that 'a party's challenge to another provision of the contract, or the contract as a whole, does not prevent a court from enforcing the specific agreement to arbitrate.'" *Patrick*, 93 F.4th at 479.